**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| PUTT-PUTT, LLC, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 8:12-cv-03018-AW |
| 416 CONSTANT FRIENDSHIP, LLC *et al.*, | * |
| Defendant. | * |
| | * |
| | * |
| | * |

*******************************************************************************

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Plaintiff Putt-Putt, LLC ("Putt-Putt")'s Motion for Summary

Judgment against Defendant 416 Constant Friendship, LLC ("416 CF").  Doc. No. 12.  The

Court has reviewed the parties' briefs and accompanying exhibits and concludes that no hearing

is necessary.  *See* Loc. R. 105.6 (D. Md. 2011).  For the reasons articulated below, the Court will

GRANT Plaintiff's Motion for Summary Judgment in part, and DENY in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are taken from the Complaint, Answer, and the parties'

briefs and exhibits submitted in connection with Plaintiff's Motion for Summary Judgment.

Putt-Putt is a North Carolina company with its principal place of business in Winston-Salem,

North Carolina.  Doc. No. 1 at 1-3.  Putt-Putt operates as a nationwide franchisor of "family fun

establishments," which feature attractions such as miniature golf courses, go-karts, bumper

boats, batting cages, and video game rooms.  *Id.*  Defendant 416 CF is a Maryland company with

its principal place of business in Gaithersburg, Maryland.  Doc. No. 1 at 2.

1

Beginning in 1958, Putt-Putt became the owner of several federal trademark registrations. Doc. No. 12-1 at 3–4.  Putt-Putt obtained these trademarks for the purposes of protecting and identifying its goods and services.  Doc. No. 12-3 at 2.  Recently, Putt-Putt became the owner of a federal trademark application filed on February 6, 2012 for the term "Putt-Putt Fun Center" and a design featuring a ribbon and two flags.  Doc. No. 1-9 at 5, 15–17; Doc. No. 1-10 at 2.

Previously, the Mottley Group, LLC ("Mottley Group") operated a Putt-Putt Fun Center at 416 Constant Friendship Boulevard in Bel Air, Maryland[1] as an officially authorized Putt-Putt franchisee.  Doc. No. 12-3 at 3.  As franchisor, Putt-Putt terminated the Mottley Group's franchise agreement on June 9, 2011.  Doc. No. 12-5.  Shortly after the cancellation of the franchise agreement, the Mottley Group lost possession of the above-mentioned property.  Doc. 15 at 2–3.  Through later foreclosure proceedings, a different entity, P.D.A. LLC, came into possession of the property located at 416 Constant Friendship Boulevard.  Doc. No. 19-2 at 7, 17.

The business presently operating at the address features signage using Putt-Putt's federally trademarked terms and designs, including a cartoon miniature golf ball character named "Buster."  Doc. No. 1-5 at 2–8.  In its advertisements, the business at 416 Constant Friendship Boulevard publicly labels itself "Putt Putt Fun Center."  Doc. No. 12-7 at 6.  Online advertisements for a "Putt Putt Fun Center" appear on Groupon.com, Facebook.com, the Baltimore Sun's webpage, and Superpages.com, Doc. No. 12-6 at 2–8.  The official website for the "Putt Putt Fun Center" uses the URL www.putt-puttfuncenter.com.  Doc. No. 12-7 at 2.  The "Putt Putt Fun Center" describes itself to customers as a "family entertainment center in the Constant Friendship shopping center . . . featur[ing] laser tag, moon bounces, miniature golf, 5 batting cages, arcade games, and a concession area."  *Id.*  The website also uses several Putt-Putt

---

[1] Several documents in the record also state that the property is located in Abingdon, Maryland.

trademarked images, including the ribbon and flag design illustrated in Putt-Putt's federal trademark application filed on February 6, 2012.  Doc. No. 1-9 at 17; Doc. No. 12-7 at 2.

On March 5, 2012, 416 CF filed an application with the United States Patent and Trademark Office ("PTO"), seeking to register the mark "PUTT-PUTT FUN CENTER" for the purposes of "Amusement arcade services; Amusement centers[.]"  Doc. No. 1-8 at 2.  416 CF listed 416 Constant Friendship Boulevard as its address.  *Id.*  On its application, 416 CF stated that it had used the mark "PUTT-PUTT FUN CENTER" in commerce since January 21, 2012. *Id.*  The Examining Attorney at the PTO issued a non-final Office Action on June 18, 2012 initially refusing to register 416 CF's application due to likelihood of confusion with several of Putt-Putt's trademark registrations.  Doc. No. 1-9.  On December 17, 2012, 416 CF filed a response to the PTO's Office Action, arguing against the Examining Attorney's conclusion, and urging the PTO to reconsider its application.  Doc. No. 30-2.  On January 7, 2013, the Examining Attorney issued another non-final Office Action.  Doc. No. 30-3.  Presently, 416 CF's application is open and PTO proceedings are ongoing.  *Id.*

After communications regarding the alleged use of Putt-Putt's mark, Putt-Putt filed suit against 416 CF and co-Defendant David Vedadi on October 12, 2012.  Putt-Putt asserted claims of trademark infringement, unfair competition, and deceptive trade practices in violation of the Lanham Act, the Maryland Consumer Protection Act, and Maryland common law.  Putt-Putt requested injunctive relief, compensatory and punitive damages, and the surrender of all materials bearing the Putt-Putt mark.

On November 23, 2012, Putt-Putt moved the Court for Summary Judgment for all claims against 416 CF.  *See* Doc. No. 12.  After full briefing by the parties, the Court held a telephonic status conference on February 15, 2013 and discussed Putt-Putt's Motion for Summary

Judgment.  Following the status conference, the Court granted 416 CF leave to file supplemental briefing to support its position.  Doc. No. 24.  416 CF subsequently filed a supplemental brief, and Putt-Putt timely filed a response.  416 CF did not file a reply by the Court's March 18, 2013 deadline.  Accordingly, Putt-Putt's Motion is ripe for consideration.

For the reasons articulated below, Putt-Putt's Motion for Summary Judgment on its claims under the Lanham Act and Maryland common law will be granted.  Its Motion with respect to its claim under the Maryland Consumer Protection Act will be denied.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to Judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a Motion for Summary Judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.  Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in its favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**III. ANALYSIS**

As an initial matter, Defendant argues that all of Plaintiff's claims are barred by laches. Doc. No. 28 at 9.   Defendant states that Plaintiff failed to act to protect its mark in a timely manner as it knew that the Mottley Group operated an arcade business while in default of its franchise agreement.   *Id.*   Defendant's argument fails as a matter of law as laches is a personal defense that could only be asserted by the Mottley Group.   *See Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984) ("While abandonment results in a loss of rights as against the whole world, laches or acquiescence is a personal defense which merely results in a loss of rights as against one defendant." (citing 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 31:14, at 587 (2d ed. 1984))).   Because 416 CF cannot avail itself of another party's defense of laches, the Court will proceed to analyze Putt-Putt's claims.

A. Federal Trademark Infringement

Putt-Putt first asserts a claim of trademark infringement in violation of the Lanham Act. Section 32(1) of the Lanham Act creates liability for the unconsented "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark[.]"  15 U.S.C. § 1114(1) (2006).  To establish a claim of trademark infringement, a plaintiff must prove that it (1) owns a valid and protectable mark and (2) that the defendant's use of that mark creates a likelihood of confusion.  *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006); *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001).

To satisfy the first prong of the test for a federal trademark infringement claim, a plaintiff must "first and most fundamentally prove that it has a valid and protectable mark."  *U.S. Search,*

*LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002) (citing *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 341 (4th Cir. 2001)).  When the PTO issues a certificate of registration, that registration provides prima facie evidence of: (1) the validity of the mark and its registration, (2) the registrant's mark, and (3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration. *U.S. Search*, 300 F.3d at 524 (citing *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001)).  A registrant's right to use a mark in commerce for goods and services becomes incontestable once the mark has been in continuous service for five years subsequent to the date of registration.  15 U.S.C. § 1065 (2006); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193 (1985).  If the right to use a mark becomes incontestable, the registration then becomes conclusive evidence of the mark's validity and ownership.  15 U.S.C. § 1115(b) (2006).

Putt-Putt easily satisfies the first prong of the trademark infringement test.  Putt-Putt has used the Putt-Putt mark in interstate commerce since as early as 1955.  Doc. No. 12-3 ¶ 3.  The PTO issued its first certificate of registration to Putt-Putt in 1958 and Putt-Putt has owned several other federal trademark registrations since that time.  Doc. No. 1-4.  Thus, Putt-Putt's exclusive right to use its mark is incontestable and the registration is conclusive evidence of the mark's validity and ownership.

The second prong of the test is likelihood of confusion.  The standard for likelihood of confusion is whether the unauthorized use of the mark is "likely to cause confusion, or to cause mistake, or to deceive" an ordinary consumer.  15 U.S.C. § 1114(1)(a) (2006); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995).  In applying this standard, a trademark owner need not demonstrate actual confusion, as likelihood of

confusion is the proper standard of analysis. *Lone Star*, 43 F.3d at 933 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)).

Seven factors assist the Court's likelihood of confusion analysis: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; and (7) actual confusion.[2] *See Pizzeria Uno*, 747 F.2d at 1527. These factors are meant to be a guide, not a "rigid formula" of application. *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316 (4th Cir. 1992) (quoting *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 928 (2d Cir. 1990)).

In an attempt to raise a genuine issue of material fact, Defendant 416 CF asserts that there is no connection between itself and the business operating at 416 Constant Friendship Boulevard.[3] Doc. No. 15 at 2–3. However, under the "Owner Information" section on its application to the PTO filed March 5, 2012, Defendant listed 416 Constant Friendship Boulevard as its address. Doc. No. 1-8 at 2–3. The information entered onto the application was authenticated and signed under penalty of perjury pursuant to 15 U.S.C. § 1051. *See* Doc. No. 19-2 at 24–25.

---

[2] The Fourth Circuit has also analyzed additional factors such as the quality of products and the sophistication of consumers in certain circumstances. *See George & Co.*, 575 F.3d at 393. The Court need not consider those factors in this case as they apply "when the relevant market is not the public at-large." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

[3] 416 CF supports this claim with unauthenticated documents attached to both its initial brief and supplemental brief in opposition to Putt-Putt's motion for summary judgment. Doc. No. 15 at 5–10; Doc. No. 28 at 11–16. However, these documents fail to meet the requirements of Rule 56 as "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Vales v. Preciado*, No. CBD-05-3110, 2012 WL 115425, at *3 (D. Md. Jan. 13, 2012) (quoting *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). To avoid making a "technical minefield[]" out of the case, *Orsi*, 999 F.2d at 92, the Court need not address the inadequacy of 416 CF's supporting documents, as no genuine dispute of material fact exists even upon the Court's consideration of the documents.

In its supplemental brief, Defendant for the first time states that it abandoned its trademark application upon initial notice of possible conflict with Plaintiff's mark.  Doc. No. 28 at 3.  But according to its PTO application prosecution history, this claim is without merit.  After the PTO issued its initial non-final Office Action on June 18, 2012, Defendant filed a response to the PTO on December 17, 2012, disputing the PTO's analysis and arguing for the approval of its application.  Doc. No. 30-2 at 4–6.  The PTO then filed a second response on January 7, 2013, and, presently, PTO proceedings are ongoing.  *See* Doc. No. 30-3.  416 CF's arguments amount to bald statements attempting to create a material factual dispute.[4]   As the Fourth Circuit stated, "[m]ere assertions by the [opposing party] are not enough to survive summary judgment."  *Abcor Corp. v. AM Intern., Inc.*, 916 F 2d 924, 929 (4th Cir. 1990).

Additionally, any disputes with respect to the ownership of the property or operation of the business located at 416 Constant Friendship Boulevard do not alter the outcome of this case, as Putt-Putt substantiates its burden once it shows that 416 CF has used its mark without its authorization, and that such use has resulted in a likelihood of confusion.  *Lyons P'ship*, 243 F.3d at 804.  Putt-Putt meets the first element, as there is no genuine dispute of material fact that 416 CF has used Putt-Putt's mark without authorization.  To ascertain whether Putt-Putt has established the second element of the trademark infringement test, the Court will apply the guiding likelihood-of-confusion factors.

## 1. Strength or Distinctiveness of the Mark

 Under the Lanham Act, marks may be distinctive in two ways.  First, a mark is inherently distinctive if "its intrinsic nature serves to identify a particular source."  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (quoting *Two Pesos, Inc. v. Taco*

---

[4] However, even if Defendant abandoned its PTO application, it would not have an effect on the Court's analysis, as abandonment does not refute the undisputed fact that the Defendant used Plaintiff's mark in interstate commerce for a period of time beginning on January 21, 2012.  Doc. No. 1-8 at 2.

*Cabana, Inc.*, 505 U.S. 763, 768 (1992)).  Word marks are held to be inherently distinctive when they are "'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)."  *Id.* (citing *Abercrombie & Fitch Co. v. Hunting World Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976)).

Second, a mark may acquire distinctiveness, "even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Id.* at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). Conversely, "descriptive" and "generic" marks are not inherently distinctive and are not afforded protection without proof of secondary meaning.  *See Sara Lee Corp.*, 81 F.3d at 464; *see also Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 575-76 (E.D. Va. 2000).  In this case, Putt-Putt's exclusive ownership and right to use its mark is incontestable.  Such a status is a significant indicator of a strong mark.  *See Lone Star*, 43 F.3d at 934.

Although incontestability alone does not determine the strength of a mark, an evaluation of the evidence before the Court leads to the conclusion that Putt-Putt's mark is strong.  *See id.*; *Giant Brands, Inc. v. Giant Eagle, Inc.* 228 F. Supp. 2d 646, 652 (D. Md. 2002) (analyzing the strength of a mark through years in use and monies spent in advertising campaigns).  Since 1955, Putt-Putt has continuously used its mark in interstate commerce to identify its brand of goods and services.  Doc. No. 12-3 ¶ 3.  After six decades of nationwide use and promotion, the public recognizes that Putt-Putt's mark distinguishes a unique type of family fun establishment.  *Id.* ¶ 7. However, Defendant argues for the first time in its supplemental brief that Putt-Putt's mark is generic, and thus, Putt-Putt should lose its exclusive rights over its mark.  Doc. No. 28 at 6–9.

Defendant contends that Putt-Putt has become another term for miniature golf and does not identify a unique brand of goods and services. *Id.*

Generic terms are those "that refer[] to the genus of which the particular product is a species" and are not registrable. *Park 'N Fly*, 469 U.S. at 194. Under § 14(3) of the Lanham Act, a mark's registration may be cancelled if the mark becomes generic. 15 U.S.C. § 1064(3) (2006). The proper guide for determining whether a registered mark becomes the generic name of goods or services is "[its] significance to the relevant public[.]" *Id.*; *see also Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996) (citations omitted).

Because Putt-Putt's mark is registered with the PTO, the Court presumes that the mark is not generic. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) (citations omitted). This presumption has a burden-shifting effect. *Id.* As the party challenging the registered mark, 416 CF has the burden to demonstrate by a preponderance of the evidence that the "primary significance" of the Putt-Putt mark is indication of miniature golf services, not Putt-Putt's unique brand of family fun establishments. *Glover*, 75 F.3d at 59; s*ee also Freebies*, 364 F.3d at 542; *Pizzeria Uno*, 747 F.2d at 1529 n.4 (citation omitted).

To carry its burden, 416 must cite to relevant "[e]vidence of purchaser understanding [such as] direct testimony of consumers, consumer surveys, dictionary listings, as well as newspapers and other publications." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 641 (4th Cir. 1991) (citing *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)). The evidence must demonstrate the broad views of the relevant purchasing public consuming miniature golf services, not "the subjective view of a casual purchaser[.]" *Glover*, 75 F.3d at 59; *see also Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003) ("The testimony of one [person]

proves nothing at all[.]"); *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y.

1989) (distinguishing between widespread and "fairly scattered" consumer viewpoints).

In this case, 416 CF supports its argument that Putt-Putt is a generic term for miniature

golf with three Internet references: (1) a "wikiHow" "guide on how to make your own

[backyard] putt putt course"; (2) an Internet user's review of miniature golf courses in New York

City where "putt-putt" is used twice; and (3) a reference to an online video labeled "the greatest

putt putt shot of all time."  Doc. No. 28 at 7–8, 17–20.  First, the Court reiterates that

Defendant's evidence consists of unauthenticated documents that fail to meet Rule 56's

requirements, and therefore fails to create a genuine issue of material fact.  However, even when

the Court considers 416 CF's evidence, it is clearly insufficient to meet its burden to establish

that the mark is generic.  Three Internet references is akin to the view of a "casual purchaser,"

*see Glover*, 75 F.3d at 59, not the widespread belief of consumers looking to play miniature golf.

Accordingly, Defendant's evidence does not create a genuine issue of material fact.

### 2. Similarity of the Marks

Defendant raises no genuine issue of material fact regarding the similarity of the marks.

The mark used by 416 CF is identical to the mark registered by Putt-Putt.  As stated previously,

on March 5, 2012, 416 CF submitted an application to the PTO to register the mark "Putt-Putt

Fun Center."  Doc No. 1-8 at 2.  416 CF attached an image to its application displaying a design

featuring a ribbon and two flags.  Doc. No. 19-2 at 27.  416 CF's design is identical to the design

accompanying Putt-Putt's PTO application dated February 6, 2012.  Doc. No. 1-10 at 39.  The

Fourth Circuit has held that the presence of substantially identical symbols in a case of trademark

infringement strongly supports a likelihood of confusion.  *Polo Fashions, Inc. v. Craftex, Inc.*,

816 F.2d 145, 148 (4th Cir. 1987) (stating that there is a presumption of a likelihood of confusion

where a counterfeiter uses an identical mark to sell false merchandise on the good name and

reputation of the trademark owner (citing *AMP, Inc. v. Foy*, 540 F.2d 1181, 1186 (4th Cir.

1976))).

3. Similarity of Goods, Services, and Facilities

The Court next considers the similarity of goods or services which the marks identify.  In

this case, it is undisputed that both the Plaintiff and the Defendant offer similar goods and

services.  Since the mid-1950s, Putt-Putt has offered consumers family fun and entertainment

services.  Authorized Putt-Putt facilities feature miniature golf courses, go-karts, bumper boats,

batting cages, and video game rooms.  Doc. No. 1 at 1–3.  Additionally, all of the marks which

Putt-Putt currently owns are registered for various categories of entertainment, amusement, and

recreational services.  *See* Doc. No. 1-9 at 7–19.

On its March 5, 2012 application to the PTO, 416 CF attempted to register the "Putt-Putt

Fun Center" mark for "amusement arcade services; Amusement centers[.]"  Doc. No. 1-8 at 2.

The business at 416 Constant Friendship Boulevard advertises itself to the public as "Putt Putt

Fun Center," Doc. No. 12-7 at 6, and features amusements, games, and signage incorporating

Putt-Putt's protected marks, *see* Doc. No. 1-5 at 2-8.  Accordingly, there is no genuine dispute

that 416 CF offers the same goods and services as Putt-Putt.[5]

Additionally, the similarity of facilities factor is established when considering that the

facility at 416 Constant Friendship Boulevard was once a former authorized Putt-Putt franchise

operated by the Mottley Group.  Doc. No. 12-3 at 3.  This Court has held previously that "[w]ith

respect to [an] infringement claim, a franchisee's continued use of the franchisor's trademarks

---

[5] In its brief, Defendant offers an unsupported claim that "there are factual disputes between the related goods and services[.]"  Doc. No. 15 at 2.  Even if there was one iota of difference between the offered goods and services of the parties, the applicable standard in this case would nonetheless be "sufficient similarity."  *A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp. 2d 426, 431 (D. Md. 1999).

creates a sufficient likelihood of confusion to entitle [the franchisor] to at least nominal damages." *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 356 (D. Md. 2004) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997)).  This case parallels *7-Eleven*, as a new business entity is operating a former franchise location, displays signage bearing the franchisor's mark, and provides the same services as authorized franchisees.  Due to Defendant 416 CF's use of the same building that once housed a former authorized Putt-Putt franchise, the similarity of facilities factor is easily satisfied.

### 4. Similarity of Advertising

In its supplemental brief, Defendant asserts that certain advertisements posted on Groupon.com, Facebook.com, the Baltimore Sun's webpage, and Superpages.com, Doc. No. 12-6 at 2–8, are not attributable to it.  Doc. No. 28 at 5.  However, Defendant nowhere addresses the representations made on the "Putt Putt Fun Center['s]" website www.putt-puttfuncenter.com, which lists 416 Constant Friendship Boulevard as its address.  Doc. No. 12-7 at 5.  Considering the content on the website, the similarity of advertising factor supports Plaintiff's position, even assuming that the Groupon, Facebook, Baltimore Sun, and Superpages advertisements cannot be linked to 416 CF.

When comparing advertising between the parties, the Court considers the media used, the geographic areas in which the advertising occurs, the appearance of the advertisements, and the content of the advertising.  *CareFirst*, 435 F.3d at 273 (citing *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 95 (4th Cir. 1997)).  Here, the advertising factors weigh significantly in Putt-Putt's favor in establishing a likelihood of confusion.

As stated previously, the business operating at 416 Constant Friendship Boulevard presents itself to the public as a "Putt Putt Fun Center."  Doc. No. 1-7 at 3.  The business's

website has the URL of www.putt-puttfuncenter.com, and bears the image of Putt-Putt's registered cartoon character "Buster" the golf ball. *Id.* at 4. When customers seek directions to the "Putt Putt Fun Center," the website directs them to 416 Constant Friendship Boulevard. Doc. No. 12-7 at 5. Considering the content and appearance of 416 CF's advertising, the nationwide presence of Putt-Putt, and the widespread access to 416 CF's online representations, there is a strong similarity in 416 CF's advertising.

### 5. Defendant's Intent

When deciphering the Defendant's intent, the Fourth Circuit has stated that a presumption of a likelihood of confusion exists in appropriate circumstances involving the entrance of a newcomer to a given market. The Fourth Circuit stated that

> When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose trade dress was copied. Logic requires, no less than the presumption of secondary meaning from copying, that such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion.

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 240-41 (4th Cir. 1997) (quoting *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 165 (4th Cir. 1990)); *see also Allen v. Standard Crankshaft & Hydraulic Co.*, 323 F.2d 29, 36 (4th Cir. 1963).

A presumption of a likelihood of confusion is appropriate in this case as Defendant operates a facility that was once an authorized Putt-Putt franchise, labels and advertises itself as "Putt-Putt Fun Center," offers consumers the same goods and services as official Putt-Putt franchisees, and features signage using marks and designs incontestably owned by Putt-Putt. 416 CF's conduct leads ordinary consumers to believe that it is an authorized Putt-Putt franchise. Seeing as the touchstone for trademark infringement is confusion in the minds of consumers,

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012), it is clear that 416 CF is intending to "free-ride on [Putt-Putt's] goodwill." *Shakespeare*, 110 F.3d at 241.  Considering that 416 CF has not offered evidence to the contrary, the presumption of a likelihood of confusion is appropriate.

The analysis of the appropriate factors leads to the conclusion that Defendant 416 CF's conduct would likely confuse consumers.  By establishing a likelihood of confusion, Putt-Putt has demonstrated both prongs necessary for a claim of federal trademark infringement.  Because 416 CF has failed to raise a genuine issue of material fact, the Court will grant summary judgment to Putt-Putt on its federal trademark infringement claim.

B. Federal Unfair Competition

Putt-Putt next complains of federal unfair competition under Section 43(a) of the Lanham Act.  15 U.S.C. §1125(a) (2006).  The test for unfair competition is likelihood of consumer confusion, similar to that for trademark infringement.  *See, e.g.*, *Ga. Pac. Consumer Prods., Ltd. v. Von Drehle Corp.*, 618 F.3d 441 449 (4th Cir. 2010) (stating that "the tests for trademark infringement and unfair competition . . . focus on the likelihood of confusion as to the source of the goods involved.); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (referring to the likelihood of confusion standard for trademark infringement and unfair competition interchangeably).  As the Court established previously, Defendant 416 CF's conduct created a likelihood of confusion amongst consumers.  Accordingly, the Court will also grant summary judgment in favor of Putt-Putt on its federal unfair competition claim.

C. State Law Claims

Plaintiff also asserts a claim under Maryland common law for unfair competition, as well as a claim for unfair and deceptive practices under the Maryland Consumer Protection Act

("MCPA").  Under the common law of Maryland, the applicable test for unfair competition is the same likelihood of confusion test applied under the Lanham Act.  *See Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir. 1992) (holding that the likelihood of confusion test applies not only to federal claims under the Lanham Act, but also to unfair competition claims under Maryland law); *see also Mid South Bldg. Supply of Md., Inc. v. Guardian Door & Window, Inc.*, 847 A.2d 463, 471-72 (Md. Ct. Spec. App. 2004) (stating that trademark infringement and unfair competition claims under both the Lanham Act and Maryland law are based upon the same legal test).  As Putt-Putt has demonstrated a likelihood of confusion under the Lanham Act, the Court will grant summary judgment in Putt-Putt's favor on its common law unfair competition claim.

However, the Court will deny Putt-Putt's Motion on its claim of unfair or deceptive practices under the MCPA.  The MCPA provides a cause of action for any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1) (2012).  However, this cause of action is only granted to consumers.  The statute defines "consumer" as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit."  *Id.* § 13-101(c)(1).  Putt-Putt is not a consumer of 416 CF's goods and services, but, rather, a competitor. As a competitor of 416 CF, Putt-Putt has no standing to sue under the MCPA.  *See Scotch Whisky Ass'n*, 958 F.2d at 597 n.9 (eliminating a trade association's claim under the MCPA as it was not a consumer); *Custom Direct, LLC v. Wynwyn, Inc.*, No. RDB-09-2348, 2010 WL 1794248, at *2 (D. Md. 2010) (dismissing a competitor's claim under the MCPA as it was not a consumer); *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909–11 (D. Md. 1997)

(interpreting the language and purpose of the MCPA to hold that competitor could not state a claim).  Therefore, the Court will dismiss Putt-Putt's MCPA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT-IN-PART and DENY-IN-PART Plaintiff's Motion for Summary Judgment.  A separate Order will follow.


  __April 5, 2013__                                    _____/s/_____
        Date                                                        Alexander Williams, Jr.
                                                                    United States District Judge