IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| PUTT-PUTT, LLC, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 8:12-cv-03018-AW |
| 416 CONSTANT FRIENDSHIP, LLC *et al.*, | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court is Defendant David Vedadi's Motion for Summary Judgment. Doc. No. 42. The Court has reviewed the motion papers and exhibits and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons that follow, Defendant's Motion will be DENIED.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the parties' motion papers and exhibits, with all reasonable inferences drawn in favor of the nonmoving party. The factual background from the Court's April 5, 2013 Memorandum Opinion, Doc. No. 31, is also incorporated by reference.

On February 8, 2002, the Mottley Group, LLC ("Mottley Group"), a now-forfeited Maryland limited liability company owned in partnership by James Mottley and Thomas Mottley, entered into a franchise agreement with Plaintiff Putt-Putt, LLC ("Putt-Putt") to operate an authorized Putt-Putt Fun Center at the facility located at 416 Constant Friendship Boulevard in Abingdon, Maryland ("the Abingdon fun center"). Doc. No. 43-2, Callahan Aff. ¶¶ 2-4. The Mottley Group operated its authorized Putt-Putt franchise until the second half of 2010, when it ceased reporting royalties to Putt-Putt. *Id.* ¶ 5. On or about December 22, 2010, Thomas

1

Mottley signed a settlement agreement and general release with Putt-Putt that released him from claims arising out of the February 2002 franchise agreement, required payment of a termination fee to Putt-Putt, and provided that he would act as Putt-Putt's representative for the possible purchasing or leasing of the Abingdon fun center. *Id.* ¶ 6.

In November 2010, P.D.A. LLC ("PDA") purchased the promissory note for the Abingdon fun center from Wells Fargo Bank, N.A. Doc. No. 43-7; Doc. No. 42-3, Vedadi Aff. ¶¶ 3-4. Defendant David Vedadi is the Managing Member of PDA, which was created in 2002 and maintains its principal office at 19110 Montgomery Village Avenue in Gaithersburg, Maryland. *Id.* ¶ 2; Doc. No. 19-2 at 8, 19. PDA's intention upon purchasing the note was to turn the property for resale or to lease it. Doc. No. 42-3 ¶ 3. Following the purchase of the note, PDA initiated foreclosure proceedings on the property in the Circuit Court for Harford County, Maryland. *Id.* ¶ 4. On April 5, 2011, Paul Case Aiken II ("Aiken"), as court-appointed trustee in the foreclosure proceedings, offered for sale at public auction the Abingdon fun center, which he sold to himself as trustee for PDA for $1,000,000. Doc. Nos. 43-7, 43-8, and 43-9. Aiken has also been representing Vedadi in the instant proceedings.

Around the time of the foreclosure proceedings, Vedadi directed Aiken to form Defendant 416 Constant Friendship, LLC ("416 CF"). Doc. No. 42-3 ¶ 7. The new limited liability company was formed on May 10, 2011, and shared the same principal office as PDA. Doc. No. 43-11. Vedadi avers that he sought to transfer ownership of the Abingdon fun center from PDA to a new entity after the foreclosure proceedings concluded, and that 416 CF was created with this purpose in mind. Doc. No. 42-3 ¶ 6.

At some point in 2011, Vedadi and representatives of Putt-Putt entered into discussions regarding the future of the Abingdon fun center. On or about March 20, 2011, David Cassels, a

minority shareholder of Putt-Putt and President of a marketing company of which Putt-Putt is a client, met with Vedadi and Thomas Mottley at the Abingdon fun center. Doc. No. 43-28, Cassels Aff. ¶¶ 2-3. According to Cassels, Vedadi represented that he intended to purchase the Abingdon fun center. *Id.* ¶ 3. The parties discussed Vedadi's plans for the property and updates Vedadi would be required to make to reopen it as an authorized Putt-Putt Fun Center. *Id.* ¶¶ 4-5. At the time of the March 20 meeting, the Abingdon fun center was still branded as a Putt-Putt Fun Center. *Id.* ¶ 6.

David Callahan, CEO and President of Putt-Putt, avers that he had at least five separate telephone conversations with Vedadi in the spring and early summer of 2011. Doc. No. 43-2 ¶ 8. According to Callahan, Vedadi claimed to own the business at the Abingdon fun center. *Id.* Callahan avers that he spoke with Vedadi on May 13, 2011 about the need to debrand the Abingdon fun center before he opened it for business, unless he was approved as a Putt-Putt franchisee. *Id.* ¶ 9. Later that day, Callahan e-mailed Vedadi to confirm the substance of their telephone conversation. *Id.* ¶ 10; Doc. No. 43-4. Ten days later, on May 23, 2011, Callahan had another telephone conversation with Vedadi and reiterated that debranding of the facility was necessary unless Vedadi became an authorized franchisee. Doc. No. 43-2 ¶ 11. The same day, Putt-Putt's office manager sent Vedadi an e-mail with an attachment explaining Putt-Putt's debranding requirements. Doc. No. 43-5.

Three days later, on May 26, 2011, a new Maryland limited liability company named Solomon Entertainment, LLC ("Solomon Entertainment") was formed with James Mottley listed as the resident agent and the Abingdon fun center (416 Constant Friendship Boulevard) listed as the company's principal office. Doc. Nos. 43-13, 43-14. According to its articles of

organization, Solomon Entertainment was established with the purpose of "Entertainment Facility."  Doc. No. 43-14.

On June 9, 2011, Callahan sent formal notice to the Mottley Group, James Mottley, and Thomas Mottley that Putt-Putt was terminating its franchise agreement for the Abingdon fun center.  Doc. No. 43-2 ¶ 13; Doc. No. 42-3 ¶ 10.  Callahan also provided a copy of Putt-Putt's debranding requirements with the notice of termination.  Doc. No. 43-2 ¶ 13.  On or about July 11, 2011, Callahan had a telephone conversation with Vedadi and James Mottley, who told Callahan that he was managing the Abingdon fun center for Vedadi.  *Id.* ¶ 14.  During the call, Callahan again advised Vedadi and Mottley that debranding was required and that they could not operate the facility as a Putt-Putt Fun Center.  *Id.* ¶ 15.  Subsequent to that conversation, Callahan attempted to further communicate with Vedadi regarding the need to debrand the Abingdon fun center, but his phone calls were not returned.  *Id.* ¶ 16.

For his part, Vedadi avers that Putt-Putt contacted him in the summer of 2011 to inquire whether he would be willing to sell or lease the property.  Doc. No. 42-3 ¶ 8.  Vedadi confirms that he had several communications with Putt-Putt representatives, including Callahan, but that Vedadi abandoned these discussions.  *Id.*  Vedadi also confirms that Putt-Putt sent him its debranding requirements.  *Id.* ¶ 9.  However, Vedadi avers that at all times while he communicated with Putt-Putt, he was not operating a business, nor has he ever operated a business, at the location of the Abingdon fun center.  *Id.* ¶ 11.

After Vedadi abandoned discussions with Putt-Putt, on October 11, 2011, Aiken formed a Maryland corporation called All American Fun Center, Inc. ("All American") with the stated purpose of operating an arcade.  Doc. Nos. 43-15, 43-16.  Records from the Harford County Health Department and the Division of Labor and Industry Inspection indicate that All American

and Solomon Entertainment were licensed to operate at the location of the Abingdon fun center from 2011 through 2013.  Doc. No. 42-3 ¶ 12; Doc. No. 42-6; Doc. No. 42-7.

On December 8, 2011, PDA, by and through its attorney Aiken, filed a motion in the state foreclosure proceedings for judgment awarding possession of the property.  Doc. No. 19-2 at 13-14.  PDA's motion represented that it was the foreclosure purchaser and equitable owner of the property, that Mottley Group and other potential claimants had vacated and abandoned the Abingdon fun center, and that PDA was exposed to irreparable harm by not having the ability to preserve and protect the property.  *Id.*  The following day, the Circuit Court for Harford County granted PDA's motion and awarded possession of the Abingdon fun center to PDA.  *Id.* at 17.

As discussed in the Court's April 5 Memorandum Opinion, following the award of possession of the Abingdon fun center to PDA, the business at 416 Constant Friendship Boulevard, without authorization from Plaintiff, began operating and promoting itself as a Putt-Putt Fun Center.  *See* Doc. No. 31 at 2-3.  For example, the business publicly labeled itself as a "Putt Putt Fun Center" in various advertisements, promotional materials, and at its www.putt-puttfuncenter.com website.  Doc. No. 12-6 at 2-8; Doc. No. 12-7 at 2, 6; Doc. No. 43-22.  The business featured signage using Putt-Putt's federally trademarked terms and designs, including a cartoon miniature golf ball character named "Buster," and the website featured several trademarked images including a ribbon and flag design.  Doc. No. 1-5 at 2-8; Doc. No. 1-9 at 17; Doc. No. 12-7 at 2.  In June 2012, a Groupon advertisement for the unauthorized facility promoted the fact that "new owners gained control" of the property in 2011.  Doc. No. 43-23.

In March 2012, Vedadi directed Aiken to prepare and file an application for trademark protection with the United States Patent and Trademark Office ("PTO") for the "Putt-Putt Fun Center" trademark.  Doc. No. 42-3 ¶ 14; Doc. No. 19-2 at 21.  The application listed 416 CF as

the owner of the mark and 416 Constant Friendship Boulevard as the owner's address. *Id.* The applicant's e-mail address was listed as casper@casper-mgm.com, an address affiliated with another Vedadi enterprise, Casper Management, Inc. *Id.*; Doc. No. 43-24.  As part of the application, Aiken signed a declaration under penalty of perjury verifying the contents of the application, including its representation that 416 CF had been using the mark in commerce since at least January 21, 2012.  Doc. No. 19-2 at 21-25.  Aiken also submitted a photograph of the Putt-Putt Fun Center design logo on what appeared to be a staff member's uniform as evidence of 416 CF's use of the mark. *Id.* at 27.

On June 18, 2012, the Examining Attorney of the PTO issued a non-final Office Action refusing to register 416 CF's mark due to likelihood of confusion with Putt-Putt's registered trademarks.  Doc. No. 1-9.  On December 17, 2012, 416 CF filed a response to the PTO's Office Action, argued against the Examining Attorney's conclusions, and urged the PTO to reconsider its application.  Doc. No. 30-2.  The Examining Attorney issued another non-final Office Action on January 7, 2013.  Doc. No. 30-3.  When 416 CF failed to respond within six months, the PTO issued a Notice of Abandonment of 416 CF's application on August 5, 2013.  Doc. No. 43-25.

Aiken avers that he identified January 21, 2012 as the first date of the mark's use in commerce because it was approximately thirty days after the Circuit Court for Harford County granted possession of the property to PDA in the foreclosure proceedings.  Doc. No. 42-4, Aiken Aff. ¶ 6.  Aiken further maintains that "[t]his date was not provided to [him] by Mr. Vedadi, PDA, LLC or 416 CF," and that he "only used information that [he] was aware of through [his] involvement in the Foreclosure Action." *Id.*

Vedadi avers that the reason for submitting the application to the PTO was to find out whether he would be able to use the Putt-Putt mark when soliciting any potential tenants.  Doc.

6

No. 42-3 ¶ 13. Vedadi also directed Aiken to reach out to Putt-Putt representatives in 2012 to discuss the possibility of having a franchise at the location, but he eventually decided to abandon these discussions. *Id.* ¶ 15. Vedadi asserts that as a result of the rejection of the trademark application and for "other reasons," neither he nor 416 CF "assumed control of or operated at the Location." *Id.* ¶ 16. Vedadi stopped all attempts to set up any business under 416 CF, and the entity was forfeited and "never operated as more than a possibility." *Id.* Finally, Vedadi avers that he never took title to the property located at 416 Constant Friendship Boulevard, he has no ownership or interest in any entity operating at the location, he never participated in the operations at the location, and he never induced, encouraged, instructed or otherwise participated in any usage of the Putt-Putt mark. *Id.* ¶¶ 17-20.

On October 11, 2012, Putt-Putt filed suit against 416 CF and Vedadi, alleging counts of trademark infringement (Count I) and unfair competition (Count II) under the Lanham Act, unfair competition under Maryland common law (Count III), and violations of the Maryland Consumer Protection Act (MCPA) (Count IV). Doc. No. 1. On April 5, 2013, the Court granted-in-part Putt-Putt's Motion for Summary Judgment and found Defendant 416 CF liable for Counts I, II, and III, while Count IV was dismissed. Doc. Nos. 31-32. The Court held, *inter alia*, that there was no genuine issue of material fact that 416 CF had used Putt-Putt's mark without authorization. Doc. No. 31 at 7-8. Trial is pending with respect to Plaintiff's claims for damages against 416 CF. In his pending Motion, Defendant Vedadi argues that he is entitled to summary judgment on Putt-Putt's claims against him because he did not use or otherwise participate in the use of Putt-Putt's mark. The Motion has been fully briefed and is ripe for the Court's consideration.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Furthermore, a nonmoving party cannot defeat summary judgment with merely a scintilla of evidence. *See American Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009).

## III.     ANALYSIS

Plaintiff's remaining claims against Defendant Vedadi are for trademark infringement under the Lanham Act, unfair competition under the Lanham Act, and unfair competition under Maryland law. Section 32(1) of the Lanham Act creates liability for the unconsented "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered

mark[.]" 15 U.S.C. § 1114(1) (2006). To establish a claim of trademark infringement, a plaintiff must prove that it (1) owns a valid and protectable mark and (2) that the defendant's use of that mark creates a likelihood of confusion. *See, e.g.*, *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006); *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001). The likelihood of confusion test also applies to determining liability for unfair competition under section 43(a) of the Lanham Act, *see, e.g.*, *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001), and for unfair competition under Maryland state law, *see, e.g.*, *Mid South Bldg. Supply of Md., Inc. v. Guardian Door & Window, Inc.*, 847 A.2d 463, 471-72 (Md. Ct. Spec. App. 2004). To establish Defendant's personal liability on its claims, Plaintiff must demonstrate that Vedadi personally participated in, or was the driving force behind, the infringing activity. *See, e.g.*, *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987); *Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 402, 405 (D. Md. 2010); *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065-66 (E.D. Va. 2002); *see also Brittingham v. Jenkins*, 914 F.2d 447, 458 (4th Cir. 1990) ("As the principal architect of the underlying infringement, equity requires that [the appellant] be held jointly and severally liable for the judgment.").

Vedadi argues that he is entitled to summary judgment on Plaintiff's claims because he did not use Plaintiff's mark in connection with Defendants' business. *See* Doc. No. 42-1 at 8. Vedadi principally relies on statements from his affidavit in which he avers that neither he nor 416 CF ever took title to or possession of the property or operated a business at 416 Constant Friendship Boulevard, and that neither he nor 416 CF ever participated in the business operations at the location or induced, encouraged, instructed, or otherwise participated in the use of Putt-

Putt's mark. Doc. No. 42-3 ¶¶ 11, 16-20. Vedadi emphasizes that the sole factual support for finding that 416 CF operated at the location and used Putt-Putt's mark is the trademark application filed by Aiken, but that Aiken had no personal knowledge as to whether 416 CF was operating at the location or using Plaintiff's mark and that the basis for his representations in the application was what he had learned in the state court foreclosure action. Doc. No. 42-4 ¶ 6.

As a preliminary matter, the Court will address what appear to be requests by Vedadi that it reconsider its previous determination as to 416 CF's liability, or that Vedadi should not be bound by the Court's ruling with respect to 416 CF. As discussed above, the Court held in its April 5, 2013 Memorandum Opinion that there was no genuine dispute of material fact that 416 CF had used Putt-Putt's mark without authorization. Doc. No. 31 at 7-8. Vedadi's request is governed by Rule 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Courts in this district generally have identified the following grounds for reconsideration of an interlocutory order: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Coulibaly v. JP Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2013 WL 3507096, at *1 (D. Md. July 10, 2013) (quoting *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565-66 (M.D.N.C. 2005)).

Vedadi has failed to present an adequate basis for the Court to reconsider its previous determination of 416 CF's liability. Vedadi argues that "[a]t first blush, the trademark application appears to put 'use' squarely on Defendants. However, the attached Affidavits reveal

that the application was not based on the true state of facts regarding business operations at the Location or use of the trademark." Doc. No. 42-1 at 10. Vedadi fails to explain why he failed to submit such evidence prior to the Court's ruling on Putt-Putt's Motion for Summary Judgment on 416 CF's liability. Defendants had ample opportunities to present sworn affidavits from Vedadi and Aiken. Indeed, following a telephonic conference on February 15, 2013, the Court granted Defendants leave to file supplemental briefing and evidence to support their contention that there were genuine issues of material fact with respect to 416 CF's liability. *See* Doc. No. 24.

Regardless, the affidavits attached to Vedadi's Motion for Summary Judgment do not suffice to alter the Court's previous determination. Aiken avers that in filling out 416 CF's trademark application, he selected a date for 416 CF's first use of the mark in commerce based only upon information that he obtained in the state court foreclosure proceedings. Doc. No. 42-4 ¶ 6. This averment makes little sense on its face, as the Court is unable to discern what information, if any, Aiken could have gleaned from the foreclosure proceedings to fill out 416 CF's trademark application. However, even if the Court accepted that Aiken may have erred with respect to the date of first use, Aiken's affidavit does not create a genuine issue of fact that 416 CF was using Putt-Putt's registered mark. Indeed, the attachment to the trademark application, a photograph of a the Putt-Putt Fun Center logo on what appears to be a staff member's uniform, is evidence of 416 CF's use in commerce of Plaintiff's mark. Doc. No. 19-2 at 27. Accordingly, Vedadi has presented no justification for the Court to reconsider the issue of 416 CF's liability.

As for Vedadi's liability, the Court concludes that despite the statements in his affidavit, Doc. No. 42-3, there are genuine issues of material fact as to whether Vedadi personally

participated in, or was the driving force behind, the use of Plaintiff's mark in commerce. Although Vedadi asserts that he never had any interest in or control over the business operating at 416 Constant Friendship Boulevard, *see id.* ¶¶ 16, 18, the entity of which he was Managing Member, PDA, was awarded possession of the property in December 2011, Doc. No. 19-2 at 13-14, 17. Vedadi admits that he sought to create a new entity to which PDA could transfer the property, and that he directed his attorney Aiken to establish 416 CF for that very purpose. Doc. No. 42-3 ¶¶ 6-7. It is also undisputed that Vedadi engaged in a series of communications with Putt-Putt representatives during 2011 and 2012, during which Putt-Putt informed Vedadi of the need to debrand the facility and the parties discussed how Vedadi could obtain approval for a franchise at the location. *See, e.g.*, *id.* ¶¶ 8, 15, Ex. A; Doc. No. 43-2 ¶¶ 8-16; Doc. No. 43-28 ¶¶ 2-6. Putt-Putt representatives aver that these communications included personal meetings with Vedadi at the Abingdon location and telephone conversations with Vedadi while he was at the location. Doc. No. 43-2 ¶¶ 14-15; Doc. No. 43-28 ¶¶ 3-5.

After discussions broke down, Vedadi admits that he directed Aiken to prepare and file a trademark application on behalf of 416 CF for the "Putt-Putt Fun Center" in March 2012. Doc. No. 42-3 ¶ 14. As discussed in substantial detail above and in the Court's April 5, 2013 Opinion, Aiken declared under penalty of perjury that 416 CF was using the mark in commerce and attached an exhibit demonstrating its use. Doc. No. 19-2 at 21-27. The business operating at 416 Constant Friendship Boulevard vigorously promoted the facility throughout 2012. Doc. No. 1-5 at 2-8; Doc. No. 1-9 at 17; Doc. No. 12-6 at 2-8; Doc. No. 12-7 at 2. The business's efforts included one advertisement which promoted its new ownership. *See, e.g.*, Doc. No. 43-23. As late as December 17, 2012, following Plaintiff's filing of this suit, 416 CF ratified the substance of its trademark application when it contested the PTO's Office Action. Doc. No. 30-2. In sum,

a reasonable fact finder could conclude that Defendant Vedadi was the driving force behind the infringement of Putt-Putt's marks.

Vedadi maintains that other businesses, including All American and Solomon Entertainment, were operating at the location from 2011-2013.  Doc. No. 42-3 ¶ 12; Doc. No. 42-6; Doc. No. 42-7.  First, this fact is not undisputed, particularly given the representations in 416 CF's trademark application that it was operating the business and using the Putt-Putt mark in commerce.  Second, even accepting that these entities had a role in the operation of the Putt Putt Fun Center, a reasonable fact finder could nevertheless conclude that Vedadi was still the principal architect of the infringement.  It was Vedadi's attorney who incorporated All American on October 11, 2011, soon after Vedadi abandoned discussions with Putt-Putt.  Doc. Nos. 43-15, 43-16.  With respect to Solomon Entertainment, although the company was originally linked to James Mottley upon its formation on May 26, 2011, records from Mottley's 2012 bankruptcy case indicate that he no longer held an interest in the company at the time of the infringing activity.  *See* Doc. No. 43-21 at 35.  The same records indicate that Mottley owed Vedadi more than $3,000,000.  *Id.* at 19.  Furthermore, when PDA took possession of the Abingdon fun center in December 2011, it represented to the Court that the other potential claimants had vacated and abandoned the property.  Based on this evidence, it could be inferred and a reasonable fact finder could conclude that Vedadi actually assumed control of Solomon Entertainment in 2011 or 2012.  Therefore, Vedadi has not carried his burden under Rule 56 to show that there is no genuine issue of material fact that he used or personally participated in the unauthorized use of Putt-Putt's marks.  Vedadi's Motion for Summary Judgment will therefore be denied.

**IV.    DEFENDANTS' REQUEST FOR JURY TRIAL**

Rule 38(b) of the Federal Rules of Civil Procedure provides that "[o]n any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served . . . ." Fed. R. Civ. P. 38(b)(1). "The term 'last pleading' refers to a pleading which contests the issue triable by a jury, such as an answer to a Complaint or a reply to a counterclaim." *Fletcher v. Maryland*, No. WMN-11-649, 2012 WL 689116, at *1 n.1 (D. Md. Feb. 29, 2012) (citing *Donovan v. Travelers Trash Co.*, 599 F. Supp. 43, 44 (E.D.N.C. 1984)). Rule 38(d) provides that a party waives a jury trial unless its demand is properly served and filed. Fed. R. Civ. P. 38(d).

Defendants in this case first requested a jury trial in their July 12, 2013 status report. Doc. No. 39 at 2. This status report was filed nearly five months after Vedadi filed his Answer to Plaintiff's Complaint, and nearly seven months after 416 CF filed its Answer. *See* Doc. Nos. 9, 25. Rule 39(b) provides that "[i]ssues on which a jury trial is not properly demanded are to be tried by the court." Fed. R. Civ. P. 39(b).[1] Defendants' jury demand was untimely and improper pursuant to the Federal Rules of Civil Procedure, and will be stricken by the Court. Accordingly, the remaining issues in this matter will be tried in a bench trial.

**V.    CONCLUSION**

For the foregoing reasons, Vedadi's Motion for Summary Judgment will be DENIED, and Defendants' untimely request for a jury trial will be stricken. A separate Order will follow.

  October 1, 2013  
    Date

             /s/  
    Alexander Williams, Jr.  
    United States District Judge

---

[1] Rule 39(b) further provides that courts "may, on motion, order a jury trial on any issue for which a jury trial might have been demanded." Fed. R. Civ. P. 39(b). No such motion has been filed by Defendants.